## JAMES HUGHES v. PETER HUGHES.[1]

March 17, 1939.

No. 31,914.

*John E. Regan,* for appellant.
*Putnam & Carlson* and *Frundt & Morse,* for respondent.

LORING, JUSTICE.

This action was brought to cancel a deed from plaintiff to defendant for 80 acres of land in Faribault county, the allegations being that it was obtained by false and fraudulent representation and by getting the plaintiff under the influence of intoxicating liquor to such an extent that he did not know the nature of the document that he was signing at the time he executed the deed. The trial court found for the defendant, and plaintiff has appealed from the judgment entered pursuant to the court's order.

■ The appellant's assignment of error by which he attempts to raise the question of the sufficiency of the evidence is wholly insufficient, but we pass that defect and review the question which he evidently intended to raise.

The parties were brothers, the plaintiff being five years the senior. The land covered by the deed in controversy is part of

[1]Reported in 284 N. W. 781.

160 acres deeded by his parents to the plaintiff, the grantors reserving a life estate. The plaintiff and his parents lived together upon the land here involved. The defendant lived near Blooming Prairie about 75 miles away. It seems that in January, 1936, the plaintiff was keeping company with the hired girl and proposed to marry her. This evidently did not meet with the approval of his parents. Not knowing their legal rights under the reservation of the life estate, they feared they would be forced to leave their home. On the 17th of that month the father wrote the defendant as follows:

"January 17th. Say, Peter Hughes, I wish you would come down here. I want to see you about James. That girl says she slept with him in his bed. He is crazy now. Come down. He wants to put me and ma out of here. He went away Friday. Will come home Monday.

"He won't say nothing. Come. Bring Frank. He has all the money. Don't let him see this letter. [Signed] Charles Hughes, Blue Earth, Minnesota. I am going to have auction if I can and get some money from auction."

In response to this letter the defendant went to the home of his parents. The defendant's evidence tends to show that as a result of a conference to which the plaintiff was a party the father agreed that if the plaintiff would deed to the defendant the 80 acres upon which the dwelling house and outbuildings were situated that plaintiff might operate the farm and the father would then not have the auction sale which he had proposed and that he would then feel that he and his wife would have a place to live for the remainder of their lives. Defendant's evidence further tended to show that plaintiff suggested this arrangement, that he and the defendant went to a law office in the city of Blue Earth, where the plaintiff gave all instructions with reference to the drawing of the deed. Both the defendant and the lawyer who drew the deed denied that the plaintiff was under the influence of intoxicating liquor at the time that the deed was executed. Defendant denied that prior to the execution of the deed there had been drinking of intoxicating

liquor either by himself or by the plaintiff during his visit to the parents or on the trip to West Bend, Iowa, where plaintiff and defendant had gone to consult with their brother John with reference to the situation. On that trip the defendant testified that he and the plaintiff had one glass of 3.2 beer each but had no other liquor except some beer on Saturday night at John's place. He also admitted that there was some drinking at Blue Earth after the execution of the deed. The defendant denied all of the alleged misrepresentations which the plaintiff says were calculated to induce him to make the deed, as well as the promise which the plaintiff claims was made by the defendant to reconvey the property to plaintiff on demand. It appears that part of the arrangement at the time the deed to defendant was given included an agreement by the defendant to take the hired girl to his home at Blooming Prairie and to keep her there until the plaintiff came for her. He (the plaintiff) later married her and built a house on the 80 acres which he had retained. From the foregoing it will be seen that the case presented a question of fact which the trial court determined against the plaintiff. Since there is abundant evidence to support the court's findings, we cannot set them aside. In fact the record discloses that the evidence strongly preponderates in favor of defendant. The aspersions upon the trial court contained in appellant's brief and made in his oral argument are wholly unwarranted and are scandalous in their nature. His brief will be stricken from the files.

■ The second assignment of error relates to the sustaining of objection to a question which was mere repetition of a previous question which had been answered.

Judgment affirmed.

MR. CHIEF JUSTICE GALLAGHER, being engaged on the pardon board when this case was argued, took no part in its consideration or decision.

MR. JUSTICE HILTON, incapacitated by illness, took no part.